# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
LYNCHBURG, VA
FILED
May 19, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ B. McAbee
DEPUTY CLERK

|  |  |
|---|---|
| BRIAN YOUNGER,<br><br>*Plaintiff,*<br><br>v.<br><br>THE CITY OF LYNCHBURG,<br><br>*Defendant.* | CASE NO. 6:24CV00051<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Brian Younger ("Younger"), a former firefighter for the City of Lynchburg ("City"), claims that the City discriminated and retaliated against him on the basis of race, in violation of (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and (ii) Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Younger, who is a Black male, alleges that the City terminated him after he reported his White colleagues for using racial slurs and after he criticized the Lynchburg Fire Department ("LFD") for failing to discipline other firefighters for using slurs. He also alleges that he was treated differently than White colleagues because he was fired for using racial slurs against a co-worker and his White colleagues were not disciplined at all for their use of racial slurs.

The City moves for summary judgment arguing that Younger was terminated because of his own misconduct—which included a racialized tirade against a co-worker—that violated City and LFD policies. Dkt. 27 at 1-2. Younger, who is now proceeding *pro se*, failed to respond to the City's statement of undisputed facts; but instead, attached fifteen exhibits in opposition to

summary judgment. *See* Dkts. 32-1–32-15. The City asks the Court to strike several of those exhibits because they were never disclosed during discovery despite the City's serving Younger with requests for admission, interrogatories, and production. Dkt. 35 at 1-3. Although the City is correct that documents not disclosed during discovery should not be considered for the purposes of summary judgment, the Court will not strike Younger's exhibits. The exhibits are not voluminous, and they support, but do not alter, the outcome.

At the outset, the Court notes that it is "not required to sift through the record searching for evidence to support opposition to summary judgment." *Crawford v. Newport News Indus. Corp.*, 2018 WL 2943445, at \*18 (E.D. Va. June 11, 2018). Given Younger's *pro se* status, though, the Court has reviewed his exhibits and has considered whether any of them create a genuine dispute of material fact. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that documents filed *pro se* are "held to a less stringent standards than formal pleadings drafted by lawyers").

Based on the undisputed facts, the Court must grant the City's motion.

## I.    FACTS

Younger is a 47-year-old Black male who worked as a firefighter for the LFD from 2007 until his termination on June 4, 2024. Dkt. 1 ¶¶ 9, 134. Younger maintained a generally positive employment record with the LFD from the beginning of his employment in 2007 through around 2020, when he began receiving minor written and verbal reprimands related to unauthorized leave and improper leave requests.  Dkt. 27-4 at 1, 9.

### A.  First Formal Disciplinary Action: Three-Day Suspension

On December 1, 2021, Younger became subject to his first formal disciplinary action arising from three separate incidents that occurred throughout 2021. Dkt. 27-4 at 29. The disciplinary action ultimately resulted in a three-day unpaid suspension. *Id.* at 32.

### 1. Brian Ritchie Incident

On September 5, 2021, Younger posted a video on his Facebook page describing a confrontation he had with an acquaintance, Brian Ritchie ("Ritchie"). Dkt. 27-4 at 29. In the video, Younger states that he had heard from other acquaintances that Ritchie—who is unconnected to the LFD—had made threats against him. Younger then describes driving to Ritchie's parents' house hoping to "catch [Ritchie] outside." Dkt. 27-7 (Younger Facebook Video), 4:24. Throughout the video, Younger makes several statements concerning having a firearm and the possibility of a violent confrontation. Specifically, he states:

- "I d[idn]'t want to have a shootout with this dipshit on a Sunday morning." *Id.* 5:49.

- "Of course, I've got [my firearm] with me all the time, but I don't want to do that." *Id.* 5:50-5:54.

- "I figured we were going to clash with the knuckles." *Id.* 5:54-5:58.

- "I will come back to Columbia Ave at any minute … y'all I am going to come back like it's time to go." *Id.* 7:10-7:25.

After Younger posted the video, Ritchie's niece contacted him and asked him to take the video down, particularly because he identified the street name where Ritchie was staying with his parents. Dkt. 27-4 at 23. Younger refused. Dkt. 27-1 at 108. Ritchie's niece then reported the video to the LFD. Dkt. 27-4 at 22.

In its disciplinary letter, the City identified that Younger's conduct violated the City's policy prohibiting employees "from engaging in acts of violence including verbally, physically, or through social media threatening, bullying, intimidating, coercing, harassing, or assaulting an employee, visitor, customer or citizen." Dkt. 27-4 at 29.

### 2. Frankie Fowler Incident

The second incident stemmed from a discussion about politics and race with co-worker Frankie Fowler ("Fowler") while he and Younger were at the fire station. Dkt. 27-4 at 29. Although the summary judgment record is thin as to what was said during the conversation, Fowler reported that the conversation made him feel "uncomfortable" and that later he felt "intimidated" by Younger when he ran into him at the grocery store and Younger asked him "[h]ow you feeling, Frankie?" Dkt. 27-1 at 77; Dkt. 27-4 at 29. The City identified that this conduct violated City policy prohibiting "intimidating, coercing, harassing, or assaulting an employee, visitor, customer or citizen." Dkt. 27-4 at 30.

3.  <u>Social Media Post Associated with January 6, 2021 United States Capitol Riot</u>

The third incident that led to the disciplinary action involved an image Younger shared on his Facebook account following the January 6, 2021 United States Capitol riot. *Id.* The image appeared to be of individuals covered by human-sized crackers, climbing the wall around the United Staes Capitol. Dkt. 27-9. According to the disciplinary letter, the post "was found to be offensive by more than one individual" and violated the City's policy stating that "employees may be disciplined for public speech or online posting that 'impairs discipline or harmony among co-workers.'" Dkt. 27-4 at 30.

**B.  Second Formal Disciplinary Action: Termination**

Although Younger was disciplined for the events described above, the City asserts that those incidents were unrelated to his termination. The City claims it terminated Younger because of events that occurred on the morning of July 16, 2022.

During the early morning shift change at LFD Station 5, Younger entered the station bedroom to place his belongings on a bunkbed. However, upon his arrival, he discovered that Firefighter Brennen Lawson, who had worked the previous shift, had already placed his items on

4

the bed Younger intended to use. Dkt. 27-4 at 39; Dkt. 27-1 at 123-24. Younger found Lawson and asked him to move his belongings. Dkt. 71-1 at 124. Lawson agreed but did not move his belongings as promptly as Younger expected. *Id.*

Although accounts differ as to whether either party made threatening movements towards the other during the exchange, neither party disputes that Younger made several comments directed at Lawson, who is a White male, including that: (i) Lawson was "a racist scumbag that couldn't keep his wife happy"; (ii) that Lawson had "pushed" his wife "right into the embrace of another Black man"; (iii) that his wife was "in California" "loving that black dick she was taking out West"; (iv) that Younger did not know why "y'all racists keep dating and marrying women who aren't racists"; (v) that if Lawson came towards him he would "fuck you all up out here"; and (iv) that Lawson better "stay away from [Younger] or else." Dkt. 27-1 at 127-29; 27-4 at 39.

By letter dated July 19, 2022, the City informed Younger that he was being placed on paid administrative leave due to notice that Younger had allegedly "verbally and physically threatened another employee and made racially motivated statements towards that employee within the station on July 16, 2022." Dkt. 27-10 at 1. The letter stated that Younger would remain on paid administrative leave pending the conclusion of the investigation. *Id.*

Ultimately, following the investigation, on June 4, 2024, Younger was terminated from his employment with the LFD. The reasons the City offered for his termination were that his "behavior on July 16, 2022" (i) "was inappropriate, unacceptable, and … unbecoming of an employee of the City of Lynchburg"; (ii) violated city policy prohibiting "any employee from engaging in acts of violence, including verbally [or] physically"; and (iii) violated City policy prohibiting "harassment or bullying of its employees." Dkt. 27-4 at 46-47.

**C. Younger's Complaints of Racial Slurs and Inequities Within LFD**

The City contends, and Younger does not dispute, that on three occasions during his employment tenure, he made complaints to supervisors of "racial slurs" and "hostility" within the LFD. Dkt. 27 at 12, 13. The first report occurred in 2017, when Younger spoke to then Deputy Chief Wormser about an audio recording Younger had received from firefighter Scott Hargis's wife.[1] In the recording, Hargis, a White male, is heard yelling at his wife and using the n-word repeatedly. Dkt. 32-1. Wormser informed Younger that he was aware of the recording and asked Younger if he would accept an apology from Hargis. Dkt. 27-1 at 41. Younger agreed that he would. *Id.* at 42.

The second complaint occurred in October 2020, when Younger filed a complaint regarding Battalion Chief Kenny Turner. *Id.* at 66. In that report Younger stated that Turner's demeanor toward him resulted in an "atmosphere of hostility." Dkt. 27 at 13. However, there are no facts in the summary judgment record about what type of "hostility" Younger believed he experienced from Kenny Turner. Moreover, neither party provides evidence regarding the outcome of that complaint.

The third complaint occurred on July 18, 2022, when Younger reported a video he had received from Lawson's wife in 2021 of Lawson "scream[ing] the 'n-word' at pedestrians [as] he drove past" them from his vehicle window. Dkt. 27 at 12. Younger reported this video two days after the incident with Lawson at Station 5, and one day prior to receiving notice that he was being placed on paid administrative leave. Dkt. 27 at 8, 12; Dkt. 27-10 at 1.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate where a case has "no genuine dispute as to any material

---

[1]    According to his deposition testimony, Younger's ex-wife gave him the video, and she received the video from Hargis's wife. Dkt. 27-1 at 40.

fact" and if "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is material "if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). A dispute is "genuine if a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.*

Any party can move for summary judgment following the conclusion of discovery; yet the moving party bears the burden and must establish that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on allegations in the pleadings; rather, it must present sufficient evidence so that a reasonable fact finder could find disputed facts in their favor. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). At summary judgment, the district court evaluates claims using a preponderance of the evidence standard. *Sylvia Dev. Corp.*, 48 F.3d at 818. The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

III.    **ANALYSIS**

Younger brings discrimination claims (Count I) under both § 1981 and Title VII and retaliation claims (Count II) under both § 1981 and Title VII. Claims arising under Title VII and § 1981 are analyzed together using the same standard. *See Guessous v. Fairview Prop. Invs, LLC*, 828 F.3d 208, 217, 219 (4th Cir. 2016) (noting the elements of discrimination and retaliation under either statute are effectively the same). A plaintiff can establish a discrimination or retaliation

claim under Title VII and § 1981 in one of two ways: either through direct evidence, or through the "prima facie" method, also called the *McDonnell Douglas* burden-shifting framework.[2] *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020). The *McDonnell Douglas* framework is comprised of three steps: (1) the plaintiff must first establish a *prima facie* case of employment discrimination or retaliation; (2) the burden then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; and (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory. *Guessous*, 828 F.3d at 216.

### A. Younger's Disparate Treatment Claim

#### 1. *Prima Facie* Showing

Title VII renders it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of disparate treatment, a plaintiff must prove four elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (citing *Coleman v. Md. Ct. of*

---

[2]   Younger does not assert that he has any direct evidence of discrimination and argues this claim using the *McDonnell Douglas* burden shifting framework. *See* Dkt. 32 at 1 ("Plaintiff establishes discrimination under *McDonnell Douglas* ...."). To show race discrimination through direct evidence, "a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the employment action." *Holley v. North Carolina Dept. of Admin., N.C.*, 846 F. Supp. 2d 416, 427 (W.D.N.C. Feb. 10, 2012) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 345 F.3d 277, 284-85 (4th Cir. 2004) (en banc)). Because Younger does not contend that he has any evidence of direct discrimination, and because the Court has not located any such evidence in Younger's filings, his claim will be analyzed claim under the *McDonnell Douglas* burden shifting framework.

*Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

As a Black male, Younger is a member of a protected class and thus satisfies the first element. *See Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). As to the second element, Younger must show he was meeting his employer's legitimate expectations. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-16 (4th Cir. 2006). In evaluating this element, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans v. Technologies Applications & Sev. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). Younger attaches performance evaluations from 2020 and 2021 that demonstrate during those years he "[met] expectations," was "a pleasure to work with," "always respectful," "well spoken," and "a strong member of the Station 5 team." Dkt. 32-11 at 6, 11. He also worked for the LFD for fifteen years, suggesting that historically he met the LFP's expectations. The LFD argues that Younger did not perform satisfactorily because he was often late to work and on July 16, 2022, he "threatened" and used racialized language against a co-worker. It is important not to conflate the "satisfactory performance" prong with the second stage of the *McDonnell Douglas* framework, where the employer articulates a legitimate, nondiscriminatory reason for the termination. *See Berger v. Sentara Health*, 2025 WL 3503041, at *5 (E.D. Va. Oct. 28, 2025). Accordingly, the Court will analyze the July 16, 2022 altercation—which the City asserts is its reason for firing Younger—at the second step of the *McDonnell Douglas* framework rather than at the "satisfactory performance" prong. This leaves Younger's generally positive performance reviews with only occasional complaints about tardiness. On these facts, a reasonable juror could find that Younger was satisfactorily performing his job as a firefighter up to the altercation on July 16, 2022.[3]

---

[3]    The City also points out that Younger did not complete the certification process to become a "master firefighter." Dkt. 27 at 2. Yet, the City also presented no evidence that Younger needed to become a master firefighter

As to the third element, Younger has satisfied it because he was terminated on June 4, 2024.[4] Dkt. 27 at 4, 23; *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) ("[T]ermination [is] an adverse employment action."). That leaves the fourth element, which requires Younger to show he was treated differently than someone of a different race.

The fourth element requires a plaintiff to "provide evidence that the proposed comparators are not just similar in some respects, but similarly-situated in all respects." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019). To that end, the plaintiff must prove that he and the comparator(s) "dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019). However, "a comparison between similar employees *will never involve precisely the same set of [] offenses* occurring over the same period of time and

---

to satisfactorily perform his job and meet the City's expectations.

[4]    Younger was placed on a three-day unpaid suspension on December 1, 2021. A suspension without pay can be an adverse employment action. *See Evans v. Md. Nat'l Cap. Parks & Plan. Comm'n*, 2020 WL 6703718, at *9 (D. Md. Nov. 13, 2020) ("Suspension without pay may constitute an adverse employment action.") (citing *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2007); *Greer v. Paulson*, 505 F.3d 1306, 1317-18 (D.C. Cir. 2007)). However, the Court will not consider the December 1, 2021 adverse action because Younger never pled his suspension as a discrete adverse action. *See* Dkt. 1; *see also Aly v. Yellen*, 2024 WL 2053492, at *6 (D. Md. May 8, 2024) ("As applied to adverse employment actions in the discrimination context, 'courts typically consider alleged adverse employment actions on their own, as discrete acts, "rather than the circumstances as a whole.").

Younger was represented by counsel when he filed his complaint and never referenced the December 1, 2021 suspension; therefore, the City has never been notified that it needs to defend the December 1 administrative suspension. But even if Younger were to have explicitly pleaded that the December 1 suspension was discriminatory, such a claim would have almost certainly been time-barred because he did not file his EEOC complaint until July 12, 2024—two-and-a-half years after the adverse employment action. *Id.* ¶ 8; *see also* 42 U.S.C. § 2000e-5(e)(1) (Title VII requires a plaintiff to file an EEOC charge within 180 days of the discriminatory conduct or 300 days if the state also has an anti-discrimination statute). For similar reasons, it is unlikely Younger exhausted his administrative remedies as to the December 1 suspension without pay, which would also require dismissal of any Title VII claim related to that adverse employment action. *See Lunn v. Clerk of Circuit Court for Baltimore City*, 2020 WL 1034070, at *4 (D. Md. Mar. 3, 2020) (noting that while the Supreme Court has held that Title VII's charge filing requirement was "not of a jurisdictional cast, ... the charge filing rule is mandatory, and a plaintiff's failure to exhaust administrative remedies thus justifies a claim's dismissal").

10

under the same sets of circumstances." *Id.* at 223 (emphasis added). Nonetheless, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

Younger complains that he was treated differently from his White co-workers. Younger, however, does not establish sufficient similarity between what he did on July 16, 2022, and what his White co-workers did. Specifically, several fellow firefighters were recorded using racial slurs off-duty and those firefighters were not disciplined by the LFD. In contrast, though, Younger used racialized and threatening language *against a co-worker in the fire station*.[5] Simply put, "differentiating circumstances" distinguish Younger's conduct from the conduct of the comparators he identifies. *Haynes*, 922 F.3d at 223–24. Therefore, he cannot establish the fourth element of the *prima facie* discrimination case—which in and of itself is a sufficient basis for granting the City's motion for summary judgment. But even assuming he did establish a *prima facie* case of disparate treatment, the City articulated a legitimate, non-discriminatory reason for terminating him.

2.   The City's Legitimate, Non-discriminatory Reason and Pretext

The City asserts it fired Younger because his statements to Lawson on July 16, 2022 were (1) "inappropriate, unacceptable, and … unbecoming of an employee of the City of Lynchburg"; (ii) violated city policy prohibiting "any employee from engaging in acts of violence, including verbally [or] or physically"; and (iii) violated City policy prohibiting harassing or bullying another employee. Dkt. 27-4 at 46-47. The City has satisfied its burden of production. *See Wannamaker-Amos*, 126 F.4th at 256 ("The employer's burden at this stage 'is one of production, not persuasion;

---

[5]   There is also some indication that Younger made physically threatening movements and gestures towards Lawson; however, Younger contests that he was physically threatening. Therefore, the Court does not consider Younger's allegedly threatening movements as part of the summary judgment analysis.

it can involve no credibility assessment.").  Therefore, the burden shifts back to Younger to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 (4th Cir. 2017).

"A plaintiff may establish pretext through two routes. The first is offering evidence that the employer's justification is 'unworthy of credence.'" *Wannamaker-Amos*, 126 F.4th at 257. "The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Id.* "If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

To rebut the City's non-discriminatory reason, Younger only offers the conclusory assertion that "[d]efendant's explanation is pretextual." Dkt. 32 at 1. He does not show that LFD's reason for firing him was untrue or that his termination was procedurally irregular. At best, Younger relies on the two incidents where the LFD failed to discipline White firefighters who used racial slurs while off-duty to establish that his termination was racially motivated. But as explained above, those incidents—which occurred outside the workplace and did not involve threats against a co-worker—are too factually dissimilar from the July 16, 2021 incident to be probative of any discriminatory intent. Accordingly, Younger has not shown that the City's legitimate, non-discriminatory reason for firing him was pretextual, and this too, dooms his claim.

### B. Younger's Retaliation Claim[6]

---

[6]   Like his discrimination claim, the Court finds that Younger has not put forth any evidence of direct retaliation. In his memorandum in opposition, Younger makes the conclusory assertion that he "establishes retaliation" through "direct evidence" and cites to an audio recording of a conversation he had with Battalion Chief Mike Thomas on September 3, 2024. Dkt. 32 at 1. However, the conversation—recorded more than two years after the July 16, 2022 incident and months after his formal termination—appears to consist primarily of Younger expressing grievances about the LFD to Thomas. It does not provide any evidence of direct retaliation on the part of the City. Accordingly, his retaliation claim will also be analyzed under the *McDonnell Douglas* framework.

To establish a *prima facie* showing of retaliation, a plaintiff must establish that (1) he "engaged in a protected activity," (2) his employer acted adversely against him, and (3) "the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011). Here, the City does not dispute that Younger engaged in a protected activity when he reported the 2021 Lawson video on July 18, 2022 or that it took adverse action when terminating Younger. Dkt. 27 at 22, 24. The City argues, however, that there is insufficient evidence to show a causal relationship exists between the protected activity and the adverse employment action.

"A causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (citation omitted). Indeed, the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see Allen v. Discovery Commc'ns, LLC*, 2016 WL 4364224, *5 (D. Md. Aug. 16, 2016) (collecting Fourth Circuit cases rejecting gaps of as little as two months).

Here, Younger reported Lawson's racist video on July 18, 2022, and was placed on administrative leave the next day. Dkt. 27 at 8, 12. That administrative leave—which inexplicably lasted for two years—resulted in his termination. *Id.* at 7-8. It is hard to imagine an adverse employment action that is proximately closer to protected activity than the one in this case. Therefore, Younger easily satisfies the causality element of the *prima facie* case. *See Breeden*, 532 U.S. at 273.

Yet, Younger's retaliation claim fails because, as analyzed above, (1) the City has satisfied

13

its burden of producing a legitimate, non-retaliatory reason for Younger's termination, and (2) Younger has done nothing to rebut the City's explanation. Younger simply has not done enough to create a jury issue as to whether the City's explanation for firing him was pretextual.[7]

## IV.    CONCLUSION

For the stated reasons, the City's motion for summary judgment will be granted in an accompanying order.

Entered this 19th day of May, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] Younger was required to establish "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (citing *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). Younger has done nothing to cast doubt on the City's proffered explanation for his termination.